IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| INFINITE ENERGY, INC., a Florida Corporation, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE NO. 1:06-CV-2923-CAP |
| v. | ) ) | |
| CATALYST ENERGY, LLC, and DARREN M. NOVICH, an individual, | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) ) | |
| DARREN M. NOVICH, | ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| INFINITE ENERGY, INC., | ) ) | |
| Counter-Defendant. | ) | |

**DEFENDANT CATALYST ENERGY, LLC'S BRIEF IN OPPOSITION TO PLAINTIFF INFINITE ENERGY, INC.'S MOTION TO COMPEL AND IN SUPPORT OF CATALYST ENERGY, LLC'S MOTION TO COMPEL**

## I.  INTRODUCTION

It's quite ironic that Infinite Energy, Inc. ("Infinite"), the plaintiff in this action, seeks to compel Catalyst Energy, LLC ("Catalyst") to produce discovery documents when Infinite has refused to participate in any meaningful discovery in

this supposedly emergent trade secret misappropriation case.  It is Infinite that has engaged in delay tactics throughout this case because as long as this case is pending, Infinite's true goal of distracting Catalyst from competing with Infinite in the natural gas market is accomplished.

Catalyst has complied with all of its discovery obligations in this case. Months ago, Catalyst served its First Interrogatories (the "Interrogatories") on Infinite to obtain information relevant to Infinite's claims against Catalyst.[1]  See Defendant Catalyst Energy, LLC's First Interrogatories to Plaintiff, a true and correct copy of which is marked and attached hereto as Exhibit "A."  However, despite the fact that the cornerstone of Infinite's Complaint relates to Catalyst's alleged misappropriation of certain trade secrets, Infinite refuses to identify those trade secrets with the particularity required under the law.  Until Infinite provides Catalyst with the requisite information about the supposedly misappropriated trade secrets, it is impossible for the parties to complete discovery.

---

[1] The dispute between Infinite and Catalyst arises from Catalyst's alleged misappropriation of Infinite's trade secrets, along with Catalyst's alleged tortious interference with Infinite's customer relationships, and Catalyst's alleged copyright infringement related to Infinite's natural gas contract.  Infinite originally asserted additional common law claims for conversion, unfair competition, breach of fiduciary duty, duty of good faith and loyalty and unjust enrichment.  Catalyst moved to dismiss these claims on the grounds that they are preempted by the Georgia Trade Secrets Act.  The Court granted Catalyst's motion on August 16, 2007 and dismissed these claims.

Now, in a waste of judicial time and resources, Infinite not only seeks to compel Catalyst to produce documents which Catalyst has already agreed produce, but also seeks to compel Catalyst to produce documents to help Infinite identify its own allegedly misappropriated trade secrets.  The truth is that Infinite has no trade secrets.  Nevertheless, Infinite wants the Court to allow it access to all of Catalyst's documents, including Catalyst's legitimate proprietary trade secret information, so that Infinite can determine what, exactly, Catalyst supposedly misappropriated. This is not how the discovery process operates in a trade secrets case.

Moreover, despite the fact that Infinite filed a 35-page complaint full of fact-intensive claims and allegations, Infinite refuses to completely respond to Catalyst's Interrogatories.  Catalyst served a mere seventeen (17) interrogatories on Infinite at the onset of the original discovery period in this case, a reasonable number of interrogatories given the nature of this case; however, Infinite has only responded to Interrogatories 1 through 10, arguing that because of the subparts set forth in Interrogatories 1 and 3, Interrogatories 11 through 17 exceed the limit of 25 interrogatories allowed under the Federal Rules of Civil Procedure.  This simply is not the case.  Accordingly, Infinite's Motion should be denied, and Infinite should be compelled to (1) identify all of its alleged trade secrets as requested in Interrogatory No. 1; (2) provide all of the details regarding each of these alleged

trade secrets as requested in Interrogatory No. 1; and (3) fully and completely respond to Interrogatories 11 through 17.

## II.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.     Infinite's Deficient Interrogatory Responses.

1.     *Infinite's Lengthy Delay in Supplementing its Interrogatory Responses Stalled Discovery for Months.*

On February 5, 2007, Catalyst served the Interrogatories on Infinite.  See Exhibit "A."  On March 12, 2007, Infinite served its objections and responses to the Interrogatories but did not identify any of its trade secrets as requested in Interrogatory No. 1 or respond whatsoever to any of the subparts set forth in this Interrogatory.[2]  See Responses and Objections of Infinite Energy, Inc. to Defendant

---

[2] Interrogatory No. 1 states: "Identify and describe in detail all of your alleged trade secrets referred to anywhere in the Complaint.  With respect to each, state separately: (a) the date on which the same was developed; (b)  the steps taken to develop the same; (c) the identity of every person who participated in the development of the same and the role that each said person played in the development; (d) the cost to Infinite of developing the same or, if not developed by Infinite, the cost to Infinite of acquiring the same, the date acquired and identity of the person, firm or corporation from whom acquired; (e)  the identity of every person who has had access to the same and whether each person signed a written agreement to maintain the secrecy or confidentiality of the same (1) prior to access and (2) at any time thereafter; (f) how the same is labeled or identified as being a trade secret; (g) the identity of all documents that refer or relate to the same; and (h) the economic value of the same."  See Exhibit "A."

Infinite's original response to Interrogatory No. 1 was: "Infinite objects to this Interrogatory on the grounds that it overly broad and unduly burdensome and seeks information that is not relevant to any claims or defenses in this action.

---

Catalyst Energy, LLC's First Interrogatories to Plaintiff, a true and correct copy of which is marked and attached hereto as Exhibit "B." Infinite also failed to respond to all of the Interrogatories. See Exhibit "B." Specifically, Infinite failed to respond to Interrogatories No. 11 through 17 on the grounds that these interrogatories exceed the limit of 25 interrogatories imposed by Fed. R. Civ. P. 33(a).[3]

On May 9, 2007, in a good faith effort to resolve this dispute and keep the discovery process moving forward, counsel for Catalyst sent counsel for Infinite the first of what would ultimately be many letters detailing the deficiencies in Infinite's discovery responses and requesting that Infinite supplement its responses to the Interrogatories. See Correspondence from David L. Pardue, Esq. to Marguerite E. Patrick, Esq., marked and attached hereto as Exhibit "C." In this

---

Infinite objects to this Interrogatory in that it seeks Infinite's trade secrets and related confidential and proprietary research. Infinite will only provide such information pursuant to the entry of a suitable protective order. Subject to these and the foregoing General Objections, Infinite responds that it will produce documents that contain the requested information once a suitable protective order is in place. Infinite also responds that its trade secrets provide it with great economic value because they have enabled it to generate significant revenues. It would be detrimental to Infinite's competitive position in the industry if Catalyst, or any other competitor, were to utilize Infinite's trade secrets to compete against it." See Exhibit "B."

[3] Because Infinite has asserted the same objection for Interrogatories 11 through 17, in compliance with Local Rule 37.1(A)(2), Catalyst has attached Infinite's interrogatory responses hereto as Exhibit "B" in lieu of quoting every objection verbatim herein.

letter, counsel for Catalyst informed counsel for Infinite that Catalyst would not produce discovery documents until Infinite identified its trade secrets with the particularity required by law.

Counsel for Infinite failed to respond whatsoever to the discovery issues addressed in the May 9, 2007 correspondence.  As a result, counsel for Catalyst sent a second letter to counsel for Infinite on June 6, 2007, requesting that counsel for Infinite address these discovery issues on or before June 15, 2007.  See Correspondence from David L. Pardue, Esq. to Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "D."

Counsel for Infinite ignored this request, as well, until July 23, 2007, when counsel for Infinite sent an email to counsel for Catalyst indicating that the Interrogatory responses would be supplemented that day.  See Correspondence from Marguerite E. Patrick Esq. to David L. Pardue, Esq. and Jill R. Johnson, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "E." Despite this indication, counsel for Infinite did not send any supplemental discovery responses that day.

On July 30, 2007, counsel for Catalyst contacted counsel for Infinite yet again to inquire into the status of the supplemental interrogatory responses, and counsel for Infinite responded that she was waiting for her client's approval and

would send the supplemental responses as soon as possible.  See E-mail between Jill R. Johnson, Esq. and Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "F."

On August 8, 2007, counsel for Infinite still had not provided the supplemental interrogatory responses.  On that date, counsel for Infinite left a voicemail for Jill Johnson, counsel for Catalyst, stating that although she believed she had sent the supplemental interrogatory responses to Infinite for review, she actually had not done so.  Counsel for Infinite again stated that she expected to provide the supplemental interrogatory responses to counsel for Catalyst "in the next day or two."

On August 17, 2007, having still not received the supplemental interrogatory responses, counsel for Catalyst requested a date certain as to when they could expect to receive the responses.  See Correspondence from David L. Pardue, Esq. to Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "G."  Counsel for Catalyst received no response and wrote counsel for Infinite a final letter, dated August 30, 2007, stating that if Catalyst did not receive the supplemental interrogatory responses by September 5, 2007, Catalyst would have no choice but to file a motion to compel the production of the responses.  See Correspondence from David L. Pardue, Esq. to Marguerite

E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "H."  Counsel for Infinite finally provided the supplemental interrogatory responses on September 7, 2007, four (4) months from the date of Catalyst's first correspondence and seven (7) months from the date the Interrogatories were first served on Infinite.  See Supplemental Responses and Objections of Infinite Energy, Inc. to Defendant Catalyst Energy, LLC's First Interrogatories to Plaintiff, a true and correct copy of which is marked and attached hereto as Exhibit "I."

        2.      *The Supplemental Interrogatory Responses Are Still Deficient.*

However, Infinite's supplemental interrogatory responses contained many of the same deficiencies as the original interrogatory responses.  For example, in the supplemental interrogatory responses, Infinite still fails to adequately respond to Interrogatory No. 1, now attempting to reserve the right to add additional trade secrets to its misappropriation claim once it reviews Catalyst's discovery documents and providing broadly sweeping responses to subparts (a) through (g) of Interrogatory No. 1.[4]  See Exhibit "I."  Infinite also again completely fails to

---

[4] Specifically, in its supplemental response to Interrogatory No. 1, Infinite claims that its trade secrets consist of "all of its customer lists relating to any particular group of its customers as well as the compilation of information contained in its customer relationship management software.  These trade secrets include its customer lists relating to the American Dry Cleaning Association, certain Asian Community customers including the Korean Cleaners Association of Atlanta, the Georgia Coin Laundry Association, the CGS master customer list or any derivation

respond to Interrogatories 11 through 17, asserting the same objection set forth in Infinite's original interrogatory responses.

As a result, counsel for Catalyst sent counsel for Infinite another letter on September 19, 2007, detailing the deficiencies of Infinite's supplemental interrogatory responses in a final good faith effort to resolve this dispute.  See Correspondence from David L. Pardue, Esq. to Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "J."  Counsel for Catalyst reiterated that if Infinite did not completely supplement its interrogatory responses on or before September 24, 2007, Catalyst would have no alternative but to file a motion to compel the requested responses.  See Exhibit "I."

---

thereof, each marketer's quarterly bonus report, Infinite Energy's Act Contact Management database, the Master Account List maintained by the marketing sales group, Desktop renewal lists, Infinite's complete list of KCAA customers, the KCAA Authorization Form List, the Chang Master Account List, and the Heo Master Account List.  These trade secrets have been developed continuously over time beginning in 1998.  The master lists were created using various customer information that was updated as needed.  The master lists were created by Infinite Energy's sales force and other Infinite Energy employees who were tasked to create such lists.  These current and past employees include Jay Heo, Steve Han, Hank Chang, Darren Novich, Margarita Uruena, Tony Lee, James Taylor, Randy Walls, Brandy Lawless, Justin Nelson, Brad Gamble, Rene Sanchez and Dave Benfield.  These trade secrets are maintained as highly confidential and access to such trade secrets is restricted.  Infinite Energy has additional trade secrets which it maintains in confidence.   It is unclear at this point whether Catalyst has misappropriated those trade secrets, as well."

On November 9, 2007, counsel for Infinite provided additional descriptions of the following alleged trade secrets: Master customer lists; Asian Community Customer Lists; Bonus spreadsheets for each marketer; Desktop renewal lists; and Act Contact Management database.  <u>See</u> Correspondence from Marguerite E. Patrick, Esq. to David L. Pardue, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "K."  However, Infinite continues to provide no details related to the development, cost, economic value or the individuals who participated in the creation of these purported trade secrets (other than the generic information provided with relation to the "master lists" in Infinite's supplemental responses) and continues to purport to reserve the right to add additional trade secrets to its misappropriation claim at a later date.  Infinite also continues to refuse to respond to Catalyst's Interrogatories in their entirety.

      3.     *The Information Infinite Refuses to Provide is Essential to Catalyst's Ability to Defend Itself Against Infinite's Claims.*

Even though Catalyst contends that none of the information Infinite claims to be a trade secret actually constitutes such under Georgia law, it is essential that Infinite provide information in discovery regarding the alleged trade secrets misappropriated by Catalyst so that Catalyst can adequately defend itself against these allegations in Infinite's Complaint.  Of particular importance is obviously a

full and complete list of the so-called trade secrets which Infinite claims Catalyst misappropriated.

Infinite also claims that Catalyst has tortiously interfered with Infinite's relationships with its customers but will provide no information in its interrogatory responses regarding which customers have either ceased doing business with Infinite or transferred their business from Infinite to Catalyst.  See Exhibit "A," Interrogatories No. 11 and 14.  Infinite also refuses to provide any information regarding how Catalyst is supposedly using Infinite's allegedly confidential information to target Infinite's customers.  See Exhibit "A," Interrogatory No. 12. These interrogatories must be answered in order for Catalyst to thoroughly evaluate and defend Infinite's tortious interference claim.  Infinite must provide Catalyst with this information so that Catalyst can depose both Infinite and these customers regarding the circumstances under which the customers ceased doing business with Infinite.

Finally, Infinite claims that Catalyst has infringed on Infinite's copyrighted Continuous Gas Service ("CGS") Agreement.  Again, however, Infinite will provide no information in its interrogatory responses regarding who was involved in the drafting of the CGS Agreement.  See Exhibit "A," Interrogatory No. 17. This information is essential because Catalyst will depose the individual(s) who

drafted the CGS Agreement in order to determine where the individual(s) obtained the language utilized in the document.  If the CGS Agreement is not entirely an original product from the minds of the individual(s) who drafted it, Infinite's copyright claim is defeated.

B.     **Catalyst's Efforts to Keep the Discovery Process Moving Forward in the Face of Infinite's Inaction.**

Once Catalyst realized that Infinite was stalling in an effort to make this litigation as protracted as possible, Catalyst decided to attempt to conduct whatever discovery it could given Infinite's deficient interrogatory responses.  Therefore, on October 16, 2007, counsel for Catalyst notified counsel for Infinite that Catalyst planned to subpoena a third-party, First Communities Management, Inc. ("First Communities") for a deposition in this case.  First Communities is one of the primary customers Infinite alleges Catalyst "stole" from Infinite.  See Email from Jill R. Johnson, Esq. to Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "L."  On October 18, 2007 counsel for Infinite responded that she did not believe it was appropriate to conduct any depositions, third-party or otherwise, until all discovery documents had been produced by both parties.  See Email from Marguerite E. Patrick, Esq. to Jill R. Johnson, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "M."

As a result, on October 24, 2007, counsel for Catalyst notified counsel for Infinite that Catalyst would produce all of its documents related to First Communities to effectuate the taking of this deposition and requested that Infinite do the same.  <u>See</u> Correspondence from David L. Pardue, Esq. to Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "N."  On October 26, 2007, counsel for Infinite restated its position that Infinite would not participate in any depositions until it received Catalyst's full document production, and that Infinite would not specially produce its documents related to First Communities so that this deposition could be taken.  <u>See</u> Correspondence from Marguerite E. Patrick, Esq. to David L. Pardue, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "O."

On November 13, 2007, counsel for Catalyst also agreed, in an effort to move this case forward, to produce documents related to Infinite's tortious interference and copyright infringement claims.  <u>See</u> Correspondence from David L. Pardue, Esq. to Marguerite E. Patrick, Esq., a true and correct copy of which is marked and attached hereto as Exhibit "P."  Because Infinite refused to provide the requested information in writing, Catalyst also suggested that Infinite sit for a brief and limited 30(b)(6) deposition so that Catalyst could obtain a full response to

Interrogatory No. 1, including subsections (a) through (g) of this interrogatory. See Exhibits "A" and "P."  Infinite has not responded to this request.

Because Infinite has completely failed to provide the requested information regarding its allegedly misappropriated trade secrets, discovery cannot commence with regards to that claim, and Catalyst's document production must be limited accordingly.  Catalyst is not "stonewalling" to delay the discovery process, but Infinite is not going to bully Catalyst into granting Infinite free and unrestricted access to Catalyst's documents and records when it is Infinite that refuses to comply with the law and that has done nothing to move this case forward on its end.

### III.     LEGAL ARGUMENT AND CITATION OF AUTHORITY

### A.     The Standard: Trade Secrets Must Be Identified With Particularity.

The "cat and mouse" game regarding the identification of trade secrets is a common tactic employed by plaintiffs in trade secret misappropriation cases. Courts have repeatedly addressed this recurring problem by requiring trade secret plaintiffs to describe their alleged trade secrets with reasonable particularity and in detail.  See e.g., Del Monte Fresh Prod. Co. v. Dole Food Co., 148 F. Supp. 2d 1322, 1325 (S.D. Fla. 2001); Porous Media Corp. v. Midland Brake, Inc., 187 F.R.D. 598, 600 (D. Minn. 1999) (finding "generalized statements wholly fail to

provide the particulars or specificity required by law" and "The orderly disposition of cases involving claims of misappropriation of trade secrets cannot permit a situation where the details concerning the claimed trade secrets are not disclosed at an early date in the litigation"); Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974) (ordering trade secret plaintiff to "identify in detail" trade secrets and confidential information allegedly misappropriated); Struthers Scientific & Int'l Corp. v. General Foods Corp., 51 F.R.D. 149, 152 (D. Del. 1970) (requiring "adequate delineation or particularization" of trade secrets at issue); Magnox v. Turner, No. 11951, 1991 WL 182450, *1 (Del. Ch. Sept. 10, 1991) (trade secret plaintiff "will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret").  Presented with this classic scenario of trade secret gamesmanship, the Court should apply the tried and tested remedy set forth in the cases above and require Infinite to identify its trade secrets in detail and with particularity.

This detailed identification of trade secrets is required because: (1) such specification is necessary in order to determine the proper scope of relevant information and discovery; and (2) the interests of justice do not permit a plaintiff to pore over a defendant's information in an effort to find something the plaintiff can then claim—in hindsight—as its own trade secret.  See Duracell, Inc. v. SW

Consultants, Inc., 126 F.R.D. 576 at 578-79 (N.D. Ga. 1989); Automed Techs., Inc. v. Eller, et al., 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (stating "[w]e will not permit plaintiff to go on a 'fishing expedition' through [defendant's] files.  Plaintiff must articulate what specific information they believe defendants have misappropriated").  See also Leucadia, Inc. v. Applied Extrusion Tech, Inc., 755 F. Supp., 635, 637 (D. Del. 1991); Xerox Corp. v. IBM Corp., 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974); Magnox v. Turner, No. 11951, 1991 WL 182450, at *1 (Del. Ch. Sept. 10, 1991); Englehard Corp. v. Savin Corp., 505 A.2d 30, 32-33 (Del. Ch. 1986); Struthers Scientific & Int'l Corp. v. General Foods Corp., 51 F.R.D. 149, 152 (D. Del. 1970).

1.    *Catalyst Cannot Produce the Remainder of its Documents Until Infinite Identifies Its Alleged Trade Secrets With the Requisite Particularity.*

As a threshold matter, it is worth noting that Infinite's discovery requests seem overly concerned with internal financial affairs and marketing strategies of Catalyst, an emerging, successful competitor.  At least one court has held that in this situation, a defendant in a trade secret dispute is justified in refusing to produce all of the documents requested by the plaintiff.  See Duracell 127 F.R.D. at 580.  Specifically, in this case, forty-one (41), virtually half, of Infinite's eighty-eight (88) document requests are aimed at obtaining information about Catalyst's

marketing strategy, hiring and business practices, etc.  See Exhibit "A" to Infinite's Brief in Support of Motion to Compel, Request Nos.  6, 14, 15, 16, 17, 24, 26, 27, 32, 33, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 80, 81, 82, 83, 84, 85, 86, 87, 88.   Therefore, from a common sense standpoint, Catalyst is understandably cautious and hesitant about handing over documents to Infinite when so many of Infinite's discovery requests are not geared toward its trade secret misappropriation claim, but are instead focused on uncovering internal operating information about Catalyst.

Even setting those concerns aside, Catalyst cannot produce certain documents (namely, Catalyst's own confidential and/or trade secret information) until Infinite identifies all of its trade secrets at issue in this case.  In its original response to Interrogatory No. 1, Infinite does not identify a single trade secret, but instead merely states that it will produce documents that reflect its so-called trade secrets.   See Exhibit "B."   This response is glaringly insufficient, so in its supplemental response to Interrogatory No. 1, Infinite states that its trade secrets include "all of its customer lists relating to any particular group of its customers as well as the compilation of information contained in its customer relationship management software."  See Exhibit "I."  Finally, in a letter dated November 9, 2007, after extensive prodding by Catalyst, Infinite provided some additional detail

regarding the following categories of its alleged trade secrets:  Master customer lists; Asian Community Customer Lists; Bonus spreadsheets for each marketer; Desktop renewal lists; and Act Contact Management database.  <u>See</u> Exhibit "K."

However, Infinite continues to claim that it has "additional trade secrets which it maintains in confidence," but that it is "unclear at this point whether Catalyst has misappropriated those trade secrets, as well." <u>See</u> Exhibit "I." Pursuant to the Consent Order for Injunctive Relief entered on December 22, 2006 (the "Consent Injunction"), Catalyst has returned to Infinite all documents that "were obtained directly or indirectly from [Infinite]."[5]  As a result, Infinite should

---

[5] Infinite's claim that it had to send a "demand letter" in order to get Catalyst to comply with the Consent Injunction is ridiculous.  If Infinite was so concerned about getting the information back immediately, it should have put such a time constraint in the Consent Injunction.  The Consent Injunction merely required Catalyst to return the documents "as soon as possible."  Given the fact that Catalyst had to retain a forensics expert to locate the documents and scrub Catalyst's computer network, Catalyst's return of the documents on April 6, 2007 was accomplished "as soon as possible" following the entry of the Consent Injunction.

Moreover, the documents that were redacted by Catalyst were "shells" of what appeared to be former Infinite documents but which now contain solely Catalyst's proprietary information.  The Consent Injunction only required Catalyst to return all "information, data, and other records" obtained "directly or indirectly from Infinite."  On April 6, 2007, Catalyst provided Infinite with the documents in its possession that originated in whole or in part from Infinite.  This production allowed Infinite to identify each document obtained or possessed by Catalyst. However, the Consent Injunction did not require that Catalyst provide Infinite with any changes, additions or modifications to these documents.

know all of the alleged trade secrets that were in Catalyst's possession and should be able to readily identify these trade secrets in discovery.

Nevertheless, Infinite improperly seeks to reserve the right to add additional trade secrets to its misappropriation claim once it has reviewed all of Catalyst's discovery documents, including Catalyst's proprietary trade secret information. Infinite claims that this position is reasonable, given that it may discover later that Catalyst misappropriated additional trade secrets.  However, Infinite's position is untenable and flaunts all discovery conventions historically applied in trade secret cases.  Catalyst has represented that it has returned all of the documents, trade secret or not, that it obtained from Infinite.  As a result, Infinite should be able to identify every alleged trade secret that it believes was misappropriated.  Even if for some reason there is doubt regarding which trade secrets Catalyst allegedly misappropriated, Infinite should then identify all of its trade secrets, and the parties can sort out through discovery whether those trade secrets were misappropriated, as well.

The bottom line is that, even if Infinite claims it does not know which trade secrets Catalyst allegedly misappropriated, Infinite should know its trade secrets now.  Infinite does not need access to Catalyst's documents to be able to identify its own trade secrets.  If Infinite has any trade secrets at all (which Catalyst

disputes), they should be easily identifiable because there are extensive steps that must be undertaken to create and protect such trade secrets.  Infinite is not permitted to use the discovery process to obtain Catalyst's documents and information in an effort to find, in hindsight, additional so-called trade secrets of its own.

2.   *Infinite Also Fails to Provide the Required Information for Each Trade Secret.*

Infinite's interrogatory responses are also materially deficient because Infinite refuses to provide the information Catalyst requested for each such trade secret, to wit:  (1) the date on which it was developed; (2) the steps taken to develop same; (3) the identity of persons who participated in the development thereof; (4) the cost to Infinite of developing same; (5) the identity of the persons who had access to same; and (6) the "independent economic value" of same.  See Exhibit "A," Interrogatory No. 1(a)-(g).

Infinite cannot dispute the materiality of this information, given that it is among the factors used to determine if a trade secret exists at all.  See e.g., Ashland Mgt., Inc. v. Janien, 624 N.E.2d 1007, 1013 (N.Y. 1993).  Nonetheless, Infinite's responses fail to provide this information.  Instead, Infinite offers only generic responses related to the development of the so-called "master lists" and purports to apply that information across the countless individual trade secrets.  That response

is evasive: if Infinite wants to claim countless individual trade secrets, then Infinite must provide the information requested for each. Because Infinite must carry this burden at trial, it cannot refuse to provide this information in discovery.

**B.    Infinite Refuses to Respond to All of Catalyst's Interrogatories.**

Infinite has also objected to Interrogatories No. 11 through 17 on the basis that these Interrogatories "exceed the limit of 25 interrogatories imposed by Fed. R. Civ. P. 33(a)." See Exhibit "B," responses to Interrogatories No. 11 through 17. Fed. R. Civ. P. 33(a) limits the number of interrogatories a party may serve upon another to "25 in number including all *discrete* subparts…." (Emphasis added). If the subparts are "logically or factually subsumed within and necessarily related to the primary [interrogatory] question" then they are not "discrete" and should not be counted as independent questions. Manship v. US, 232 F.R.D. 552, 554 (M.D. La. 2005); Dang v. Cross, 2002 WL 432197 (C.D. Cal. 2002); Kendall v. GES Exposition Servs., Inc., 174 F.R.D. 684 (D. Nev. 1997). "The purpose of the limit on interrogatories is not to prevent discovery but to prevent potentially excessive use of this particular discovery device." Power & Telephone Supply Co., Inc. v. Suntrust Banks, Inc., 2004 WL 784533, *1 (W.D. Tenn. 2004).

Out of the seventeen (17) Interrogatories served on Infinite, only Interrogatories No. 1 and 3 contain subparts. Specifically, Interrogatory No. 1

contains subparts related to Infinite's development of its trade secrets, and Interrogatory No. 3 contains subparts related to the damages claimed by Infinite. See Exhibit "A."  The subparts to Interrogatories No. 1 and 3 are secondary and related to the primary questions posed and therefore do not constitute "discrete" subparts.  Thus, these subparts do not count as separate interrogatories.

Catalyst clearly is not attempting to abuse the written discovery process by serving Infinite with a mere seventeen (17) Interrogatories.  In fact, Catalyst narrowly tailored the Interrogatories as much as possible given the multiple allegations set forth in Infinite's Complaint.  Infinite has asserted this objection for no other purpose than to avoid responding to discovery in this case and should be ordered to fully and completely respond to each of Catalyst's Interrogatories.

## IV.   CONCLUSION

Infinite's refusal to identify its trade secrets with the particularity required by law and to provide the requested interrogatory responses significantly handicaps Catalyst's ability to prepare its case and defend itself against the claims asserted by Infinite. Infinite's refusal to provide this information is without justification and is wholly contrary to the discovery rules in the Federal Rules of Civil Procedure and applicable law, as set forth above.

Accordingly, Infinite should be compelled to provide the requested interrogatory responses, including a complete list of all of Infinite's alleged trade secrets at issue in this case.  For the Court's convenience and consideration, Catalyst has attached a proposed order hereto as Exhibit "Q."  Until Infinite provides such information, Catalyst cannot produce its own confidential or trade secret information to Infinite in discovery without opening itself up to the potential for significant economic damage.  Therefore, Infinite's Motion to Compel should be denied.

## V.    CERTIFICATE OF CONSULTATION

In compliance with Fed. R. Civ. P. 37(a)(2)(B), and as shown by the correspondence attached as Exhibits C, D, F, G, H, J, L and N to this brief, Catalyst certifies that it has in good faith conferred with Infinite regarding the discovery issues set forth herein in an effort to secure the information or material without action by the Court.

Respectfully submitted this 30th day of November, 2007.

/s/ David L. Pardue
David L. Pardue
Georgia Bar No. 561217
Jill R. Johnson
Georgia Bar No. 602155

HARTMAN, SIMONS, SPIELMAN & WOOD, LLP
6400 Powers Ferry Road, N.W., Suite 400
Atlanta, Georgia 30339
(770) 955-3555
(770) 858-1095 (facsimile)
Counsel for Defendant Catalyst Energy, LLC

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1D, I hereby certify that the foregoing **BRIEF IN OPPOSITION TO PLAINTIFF INFINITE ENERGY, INC.'S MOTION TO COMPEL AND IN SUPPORT OF CATALYST ENERGY, LLC'S MOTION TO COMPEL** complies with the font size and point requirements of Local Rule 5.1B.

/s/ David L. Pardue
David L. Pardue

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day filed electronically via CM/ECF a true and correct copy of the foregoing document in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court, addressed to the following:

David A. Rabin
Marguerite E. Patrick
Morris, Manning & Martin, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, NE
Atlanta, Georgia 30326

Michael S. French
Wargo & French, LLP
1170 Peachtree Street
Suite 2020
Atlanta, Georgia 30326

This 30th day of November, 2007

/s/ David L. Pardue
David L. Pardue